IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

APPELLATE DIVISION

| | | |
|---|---|---|
| FRANK HUGHLEY, | ) | D.C. Civ. App. No. 2006-0110 |
| | ) | |
| Appellant, | ) | Super. Ct. Civ. No. 136/2004 |
| v. | ) | |
| | ) | |
| GOVERNMENT OF THE VIRGIN | ) | |
| ISLANDS, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
The Honorable Maria M. Cabret, Judge Presiding

Considered: April 29, 2011
Filed: September 23, 2011

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, District Court of the
Virgin Islands; **RAYMOND L. FINCH**, Senior Sitting Judge,
District Court of the Virgin Islands; and **AUDREY L. THOMAS**,
Judge of the Superior Court of the Virgin Islands, Division of
St. Thomas and St. John, sitting by designation.

**Attorneys:**

**Frank Hughley**, *pro se*
St. Croix, U.S.V.I.
          For the Appellant,

**Pamela Tepper, Esq. AAG**
St. Croix, U.S.V.I.
          For the Appellee.

MEMORANDUM OPINION

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 2

This appeal is before the Court on review of a civil petition for writ of habeas corpus arising from a criminal conviction for aggravated rape and unlawful sexual contact. The appellant argues he was denied effective assistance of counsel at trial.

## I.   FACTUAL AND PROCEDURAL POSTURE

On January 17, 1995, appellant Frank Hughley ("Hughley" or Appellant") was charged with three counts of aggravated rape pursuant to V.I. Code Ann. tit. 14, § 1700(a)(1) and six counts of unlawful sexual contact pursuant to V.I. Code Ann. tit. 14, § 1708(2) for conduct involving two seven-year old girls. The Superior Court appointed Attorney Gerard Luz James to serve as Hughley's trial counsel. Hughley's trial commenced on November 27, 1995. On December 1, 1995, an all-female jury returned a guilty verdict against Hughley on all counts. On February 14, 1996, Hughley was sentenced to twenty-six years of incarceration, without parole.[1]

On February 19, 1996, Hughley filed a direct appeal with this Court challenging his Superior Court conviction. He argued, *inter alia*, that he received ineffective assistance of

---

[1] The Court ordered the sentences to run consecutively.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 3

counsel at trial.[2]  On October 1, 1998, this Court dismissed

his appeal and concluded that we could not hear his collateral

ineffective assistance claims on direct appeal.

Hughley subsequently filed a collateral petition for writ

of habeas corpus arguing ineffective assistance.[3] The Superior

───────────────

[2]That case was docketed in this Court as D.C. Crim. App. No.
014/1996.

[3]Hughley also filed a plethora of *pro se* pleadings. Hughley's
proclivity to file resulted in the trial court opening eight
separate Superior Court cases. (Super. Ct. Civil Nos. 527-
2001; 614-2001; 633-2001; 350-2002; 551-2002; 060-2003; 210-
2003; 136-2004.)  Amidst those pleadings, on July 6, 2001,
Hughley filed a petition for writ of habeas corpus premised on
ineffective assistance of counsel. That petition was
mistakenly docketed by the Superior Court deputy clerk as part
of Hughley's underlying criminal case - Super. Ct. Crim. No.
1995-021 ("SX-95-CR-021"), which was assigned to then-
presiding Superior Court Judge Maria Cabret. On March 22,
2004, Hughley filed yet a second petition for writ of habeas
corpus, on the same grounds as his July 2001 petition. The
second petition was docketed as Superior Court Civil Case No.
2004-136 ("SX-04-CV-136"). On June 10, 2004, Superior Court
Judge Edgar Ross entered an order denying Hughley's civil
habeas petition, and administratively closing SX-04-CV-136
because he had a habeas petition pending under criminal case
number SX-95-CR-21, before Judge Maria Cabret. Thereafter, on
June 30, 2006, the Superior Court considered Hughley's habeas
petition on the merits, under SX-95-CR-21.
    It is well-established that habeas petitions are civil in
nature. *Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000) ("A
habeas petition, although somewhat of a hybrid, is a
considered a civil action that seeks to collaterally attack a
criminal conviction."). Hence, the Superior Court closing the
civil case and considering this civil petition under the
criminal docket number was harmless administrative error. A
better approach would have been for the Superior Court to
consolidated the habeas pleadings and proceedings filed in the
criminal case into the civil case, then move forward with

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 4


Court held evidentiary hearings on the petition on August 20,

2001[4] and June 15, 2006.  At the June 15, 2006 hearing,

Hughley testified. Hughley's defense attorney, Gerard Luz

James also testified.[5]

---

consideration of the merits under Hughley's civil petition –
SX-04-CV-136. We recognize that this administrative confusion
is largely attributed to Hughley's multiple filings, as
evidenced by the transcripts that serve as the record for this
appeal. (Two related evidentiary hearings were convened in the
Superior Court on Hughley's habeas petition – one on August
20, 2001 and the other on June 15, 2006. The 2001 hearing
transcript bears the criminal docket number – SX-95-CR-21.
However, the 2006 transcript concerning the same action bears
the civil habeas docket number – SX-04-CV-136.)
    The muddling of the record continued on appeal where
Hughley filed nine civil cases in this Court. The tangled
record notwithstanding, Hughley's July 12, 2006, *pro se* notice
of appeal opening the instant matter is clear in as much as it
firmly establishes jurisdiction by explicitly challenging the
trial court's June 30, 2006 final decision disposing of his
ineffective assistance of counsel claim on the merits. (*See*
D.C. Civil App. No. 2006-110, Civil Appeal Information
statement.)
    Notably, in Hughley's July 12, 2006, notice of appeal,
Hughley referenced civil case number SX-04-CV-136, although
the Superior Court's final decision issued under criminal case
docket number, SX-95-CR-021.  Given that this habeas appeal is
civil in nature, civil case No. SX-04-CV-136 is referenced as
the basis of this opinion.

[4]Hughley testified at the August 20, 2001 hearing. Both
Hughley and his defense counsel, Gerard Luz James testified at
the June 15, 2006 hearing.

[5] At that hearing, Hughley also testified that his trial
counsel failed to confer with him concerning:  1) empanelling
an all female jury, 2) arguing inconstantly with the statutory
definition for sexual intercourse, 3) failing to call a
medical expert to support the theory that since the victim's
hymen was intact, aggravated rape could not have occurred, 4)

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 5

On June 30, 2006, the trial court rejected Hughley's ineffective assistance claim and concluded that Attorney James' decisions were "the product of reasoned trial strategy"[6] and that Hughley failed to demonstrate that, absent his claims of error, the outcome of the trial would have been different. On July 12, 2006, Hughley filed this timely appeal.[7]

## II.   JURISDICTION AND STANDARD OF REVIEW

The Appellate Panel has jurisdiction to review appeals from final decisions of the Superior Court of the Virgin Islands concerning habeas petitions. *See* V.I.CODE ANN tit. 4, § 33 (2006); Revised Organic Act of 1984, § 23A, 48 U.S.C. §

---

failing to strike a jury who disclosed that she had a grandchild that was molested and 5) calling Hughley to testify.

[6] The trial court held that "The Court has carefully reviewed the trial transcripts and considered the testimony of Attorney James, and has determined from these sources that his decisions, which Hughley asserts were in error, were the product of reasoned trial strategy." (January 30, 2006 Order at 5.)

[7] For three years the trial court did not rule on Hughley's request for a certificate of probable cause required by our governing rules to perfect Hughley's habeas appeal. Finally, on September 24, 2009, the Superior Court denied Hughley's request for a certificate of probable cause.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 6

1613(a)(2006); *see also Parrott v. Gov't of the Virgin Islands*, 230 F.3d 615, 620-21 (3d Cir. 2000).[8]

Habeas review is an extraordinary remedy. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (citations omitted); *Gov't of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985). To prevail on a habeas appeal, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Even an error that may justify a reversal on direct appeal will not necessarily sustain a collateral attack. *See United States v. Addonizio*, 442 U.S. 178, 184-85 (1979). The burden is upon the petitioner to attack the validity of the judgment under which they are imprisoned. *See Ex rel. Soto*, 1921 U.S. Dist. LEXIS 808 (D.V.I. 1921).

We review a trial court's findings of fact only for clear error. *Gov't of the Virgin Islands v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001). The right to effective assistance of

---

[8] The Superior Court exercised jurisdiction over this Appellant's habeas petition under local law. *See* V.I. Code Ann. tit. 5, § 1303 (all writs act) and V.I. Code Ann. tit. 5, § 1301 (writs of habeas corpus); *see also Oveson v. People of the Virgin Islands*, 2011 U.S. Dist. LEXIS 45540, at *10 (D.V.I. App. Div. Apr. 24, 2011)(the Superior Court has jurisdiction over habeas petitions brought under Virgin Islands law).

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 7

counsel in certain criminal proceedings is guaranteed by the
Sixth Amendment of the Constitution as extended to the Virgin
Islands by section 3 of the Revised Organic Act of 1954.
Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561. *See McMann*
*v. Richardson*, 397 U.S. 759,771, n.14 (1970)("the right to
counsel is the right to the effective assistance of
counsel."). The "ineffectiveness" of legal representation is
a mixed question of law and fact. *Strickland v. Washington*,
466 U.S. 668, 698 (1984).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

*Strickland v. Washington,* and its progeny, set the
standard that habeas corpus petitioners must satisfy to
collaterally challenge their convictions and sentences on the
basis of ineffective assistance of counsel. 466 U.S. at 668
(1984). Under *Strickland*, Hughley is required to satisfy two
prongs. *Id.*

> First, the defendant must show that counsel's
> performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant
> by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 8

*Id.* at 687.[9]

The Supreme Court has recently reiterated that

"[s]urmounting *Strickland*'s high bar is never an easy task."

*Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010); *see also*

*Strickland,* 466 U.S. at 690("Strategic choices made after

thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable."). Because an

ineffective assistance claim can be improperly tooled as a way

to escape rules of waiver and raise backdoor issues not

presented at trial, the *Strickland* standard must be applied

with scrupulous care, lest "intrusive post-trial inquiry"

threaten the integrity of the very process that the right to

counsel is meant to serve. *Strickland*, 466 U.S. at 689-690. As

such, even under plenary review, "the standard for judging

counsel's representation, under *Strickland* is a most

deferential one." *Harrington v. Richter*, 131 S. Ct. 770, 787-

788 (2011).

---

[9] To prevail on an argument of ineffective assistance of
counsel, a defendant must show both deficiency in performance
and prejudice. *Strickland v. Washington*, 466 U.S. 668, 700
(1984). "The 'deficiency' step asks whether counsel's conduct
"fell below an objective standard of reasonableness' viewed as
of the time it occurred." *United States v. Baird*, 218 F.3d
221, 226 (3d Cir. 2000) (citing *Strickland*, 466 U.S. at 688,
690; *United States v.Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 9

## 1. Whether counsel's performance was deficient.

A reviewing court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance."[10] *Id.* at 689. Under *Strickland*, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(citing *Strickland*, 466 U.S at 687-88)).

---

[10] Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 10

Hughley's trial attorney Gerard James, testified at Hughley's June 15, 2006, ineffective assistance evidentiary hearing. At the hearing, James' testimony concerning his trial strategy vacillated.  When asked whether he made a conscious decision to empanel an all-female jury in Hughley's rape case, James initially answered "I did nothing of the sort." (June 15, 2006 Hearing Tr. 6:16-22.) However, when confronted with the transcript of his opening statement at trial, he conceded that he told jurors that,

> The reason why I only wanted only woman [sic] on the jury is because [sic] we are dealing with the female parts of the human body and I don't want a – I don't want a single man to sit here and I don't know what the female has or what happened to the female and that is why I figured the only true individuals who would be able to know for herself, or to know what actually transpired when the testimony of these individuals come on that witness stand.

(June 15, 2006, Hearing Tr. at 8:2-10, Trial Tr. vol. I at 55.)  Notably, when presented with the question for a third time, James further stated that he explained to Hughley the reason why men were excluded from the jury.[11]

---

[11]   **Q.**   Was Mr. Hughley aware that you had made a conscious trial strategy to exclude men from the jury prior to the jury being selected?

**A.**   I had to explain that to Mr. Hughley so that he will know why this was being done.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 11

James' testimony concerning his tactical approach to Hughley's trial raises more acute concerns. James' theory was that the child-victim could not have been raped because her hymen was intact. (June 15, 2006, Hearing Tr. at 11.) However, James did not employ an expert witness or any witnesses whatsoever to support this theory. (*Id.* at 11-13.) Instead, he relied solely on the medical examiner. That medical examiner was the Government's witness and testified, contrary to James' theory, that a child could indeed be penetrated and raped without rupturing her hymen. Yet, James did not seek a second opinion to challenge the medical examiner's opinion, or investigate the basis of the medical examiner's conclusions.[12]

*Strickland* does not require an attorney to investigate the conclusions of all experts, and instead, permits counsel

---

[12]

> **Q.** I will repeat the question for the record. I am asking you to assume, for purposes of this questioning, that vaginal penetration means insertion, however slight, of the penis into the labia. Can the male penis however slightly go pass the labia or the lips of the vagina or lips of say a seven year-old girl without rupturing the hymen.
>
> **[MED. EXAMINER].** Yes.

(Trial Tr. vol. II at 71:1-9).

to "make a reasonable decision that makes particular
investigations unnecessary..." 466 U.S. at 691. However, the
Circuit Courts have found performance deficient when counsel
failed to conduct adequate investigations into expert
testimony, when that testimony spoke to the merits. *See, e.g.,*
*Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir. 2007) (the
mere hiring of an expert is "meaningless" if counsel does not
"make an informed decision about whether a particular defense
is viable"). The Third Circuit has specifically found
deficient performance where defense counsel failed to seek
leave for an expert examination when the testimony from the
expert's findings go to the merits. *See, e.g., Hummel v.*
*Rosemeyer*, 564 F.3d 290, 302 (3d Cir. 2009) (defense counsel's
failure to obtain psychiatric evaluation of defendant's mental
capacity to stand trial constituted deficient representation).
Of course, there is no bright-line rule requiring defense
counsel to call a defense expert witness to rebut the expert
testimony of the prosecution's witnesses. Here, however, it is
troubling that James failed to investigate his hymen
hypothesis, call an expert to testify or consult with an
expert concerning the primary defense theory that he argued at
trial.

Frank Hughley v. GVI
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 13

Moreover, counsel's decision to focus on the preservation
of the child-victim's hymen did not take into account that the
Virgin Islands Code defines sexual intercourse as, "vaginal
intercourse or any insertion, however, slight, of a hand,
finger, or object into the vagina, vulva, or labia, excluding
such insertion for medical treatment or examination." V.I.
CODE. ANN. tit. 14, § 1699(d).[13] Hence, even had Attorney James
supported his intact hymen theory on Hughley's aggravated
assault charge, it is doubtful whether this approach could
have derailed the Government's burden of proof to show that
the victim was penetrated, "however slight." See id.

Hughley was also charged with unlawful sexual contact. At
a June 2006 evidentiary hearing concerning the instant habeas
petition, the trial court noted that where unlawful sexual
contact is concerned: penetration of any kind is not an
element that must be demonstrated to sustain a conviction for
unlawful sexual contact under the V.I. Code. (See June 15,
2006, Hearing Tr. at 20-24.)[14] Nonetheless, when questioned

---

[13] The jury instructions at trial tracked the statutory
elements of unlawful sexual contact. See 14 V.I.C. § 1699(d).

[14] We note that, Hughley testified that James failed to inform
him that he would be testifying on his own behalf in his
criminal trial. (Id. at 38.) In fact, Hughley stated that he
was not prepared to testify and that he first learned he would
testify when Attorney James called him to the stand. (Id. at

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 14

about his trial strategy concerning the unlawful sexual

contact charge, Attorney James rested on his hymen theory,

which inherently presumes penetration. (*Id*. at 22.)

Our concern grows more substantial where Hughley points

out that Attorney James failed to strike or object to the

selection of a venireman who disclosed that her grandchild had

been sexually molested. Prior to the commencement of the

trial, a juror disclosed to the trial court, *in camera*, that

approximately three years prior to trial, she believed that

her three-year old granddaughter had been sexually molested by

her father, and that the accused molester had not been

convicted. (Trial Tr. vol. 1 at 35:1-25; June 15, 2006 Hearing

Tr. at 9, 25:9-21, 26-27.)  Nonetheless, attorney James did

not object to the juror being selected and seated as juror

number eleven.[15]  (Trial Tr. vol. I at 35:17-21.)

---

38:12-28.) However, while Hughley's testimony merits
highlighting, *Strickland* cautions reviewing courts against
"second-guessing" counsel's assistance after conviction and
sentencing. *Strickland*, 466 U.S. at 689.

[15] In defense of his jury selection strategy, James testified
that Hughley himself did not object to the jury that was
selected. (*Id*. at 18.) However, Hughley testified that he was
not in the court during jury selection. (*Id*. at 28.) Hughley
further testified that the jury had already been selected when
he arrived to court on the day of his trial, and that he never
spoke to Attorney James concerning jury selection or trial
strategy. (*Id*. at 28-30.)

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 15

The Superior Court appears to justify Attorney James'
omission by assuming that "the juror apparently did not think
enough of the [sic] alleged encounter to mention it during
voire dire." (June 30, 2006, Order at 6 n. 6.) We do not take
this omission as lightly as the lower court. In our opinion,
Attorney James' omission weighs against a finding of
reasonably competent representation.

Finally, the hearing transcript reveals that James
conceded that he did not conduct a substantial investigation
into Hughley's case, nor did he conduct any independent
inquiry into Hughley's factual defense.

> **Q.**      Did you interview any of the other students enrolled
> in the school that Mr. Hughley taught martial arts
> at?
>
> **James.** No, I did not. . .
>
> **Q.**      How about any of the other employees at the school?
>
> **James.** No, I did not, sir.
>
> **Q.**      Other than discussing this matter with Mr.
> Hughley maybe twice, **did you conduct any other
> sort of investigation in this matter**?

Notably, throughout the evidentiary inquiry, Attorney
James repeatedly testified that it was his "general practice"
to ask his clients whether they had an issue with any of the
venire selected as jurors and whether they were satisfied with
the people ultimately selected as jurors. (*Id.* at 5:17-22,
6:19-22, 8:14-19, 15:11-14.) However, only when specifically
asked did James testify that he exercised this practice with
Hughley.

Frank Hughley v. GVI
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 16

**JAMES.** No, I did not.

(June 15, 2006, Hearing Tr. at 13.)

*Strickland* explains that, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. 466 U.S. at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The deferential standard which guide ineffective assistance claims calls us to presume that counsel's representation was competent. The tipping point rebutting this presumption was Attorney James' admitted failure to conduct a reasonable investigation and his failure to offer a strategic explanation justifying why he failed to conduct a basic evidentiary inquiry into the merits of Hughley's case. *See Showers v. Beard*, 2011 U.S. App. LEXIS 6217, at *11-12 (3d Cir. Mar. 28, 2011)(unpublished) (representation found deficient where trial counsel failed to investigate available evidence critical to defendant's theory); *see, e.g., Rompilla v. Beard*, 545 U.S. 374, 387 (2005)(attorney has duty to investigate all avenues leading to

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 17

facts relevant to the merits).[16]  In sum, we cannot exercise

the typical heavy measure of deference to James' judgment

concerning his failure to investigate, because the record does

not reveal that he exercised an informed strategic judgment

concerning this omission.

Standing individually, Attorney James' omissions do not

necessarily render his representation objectively

ineffective.[17]  In the aggregate, however, Attorney James'

---

[16] *See also Porter v. McCollum*, 130 S. Ct. 447, 449 (2009)
(representation found deficient where counsel "told the jury
that [defendant]. . . was not mentally healthy" but failed to
investigate or present readily available evidence which would
have proven this fact); *Couch v. Booker*, 632 F.3d 241, 246
(6th Cir. 2011) (trial court unreasonably rejected habeas
petitioner's argument that counsel should have investigated
causation); *Dugas v. Coplan*, 428 F.3d 317, 329 (1st Cir. 2005)
(representation found deficient where counsel failed to
investigate "not arson" defense and seek expert assistance or
educate himself on techniques of defending arson).

[17]

> The court must then determine whether, in light of
> all the circumstances, the identified acts or
> omissions were outside the wide range of
> professionally competent assistance. In making that
> determination, the court should keep in mind that
> counsel's function, as elaborated in prevailing
> professional norms, is to make the adversarial
> testing process work in the particular case. At the
> same time, the court should recognize that counsel
> is strongly presumed to have rendered adequate
> assistance and made all significant decisions in the
> exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 18

representation fell below the objective threshold of reasonably competent representation. *Hanson*, 2011 U.S. App. LEXIS 7727, at *12("[deficient representation] may be assessed by considering multiple alleged errors together, rather than requiring that any single error render counsel ineffective."). As such, Hughley satisfies the first prong of *Strickland*'s analysis.

### 2. Whether counsel's representation prejudiced Hughley by denying him a fair trial

The *Strickland* standard is a two-prong test. With respect to the prejudice prong, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Roundtree v. Balicki*, 2011 U.S. App. LEXIS 9757, at *33 (3d Cir. May 13, 2011)(citing *Strickland*, 466 U.S. at 691)("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")).

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 19

The proponent of a habeas challenge bears the burden of demonstrating that he would have prevailed, but for his attorney's deficient performance. *Knowles*, 129 S. Ct. at 1422; *see also Breakiron v. Horn*, 2011 U.S. App. LEXIS 7885, at *34-35 (3d Cir. Apr. 18, 2011)(citing *Strickland*, 466 U.S. at 695) ("The governing legal standard plays a crucial role in . . . assessing the prejudice from counsel's errors.").

We consider the totality of the evidence when determining prejudice because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by [counsel's] errors than one with overwhelming record support." *Hanson v. Dragovich*, 2011 U.S. App. LEXIS 7727 (3d Cir. Feb. 1, 2011); *Breakiron*, 2011 U.S. App. LEXIS 7885, at *34-35 (appellate courts must independently "weigh the evidence in assessing prejudice"); *see also Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 695-96)).

The record indicates that the evidence against Hughley was strong. At trial, the medical examiner testified that one of the child-victims told him, during the course of her physical examination, that Hughley "inserted his Charlie into my private part." (Trial Tr. vol. II at 65-66.) The chief instructor at the martial arts school where the events

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 20

transpired testified that several girls had complained to him,

on separate occasions, about Hughley's improper sexual contact

with the female students. (Trial Tr. vol. II at 110:14-25.)

Child psychologist Diane Brinker also testified that one

of the child-victims had told her, during a counseling

session, that Hughley had put his penis in her anus and that

"white stuff would come out of his penis. That he would wipe

it off with a toilet paper, and he would tell her get up."

(Trial Tr. vol. III at 22:15-25; 23:1-10.)

Both child victims also testified. One victim testified

as to several incidents where Hughley had called her into the

bathroom, laid on top of her and touched her "private parts".

(Trial Tr. vol. II at 15:17-19, 20:10-23, 21:8-25, 32-38.)

That victim's graphic account involved the prosecution's use

of a doll, to assist the girl in demonstrating where and how

Hughley had touched and penetrated her. (Trial Tr. vol. II at

24-27; Trial Tr. vol. III at 11-25.) She also testified as to

several times where Hughley had cornered her or held her

inappropriately. This victim identified Hughley, at trial, as

the man who had sexually assaulted her. (Trial Tr. vol. II at

34.)  Her testimony was corroborated by a second child-victim

who saw Hughley inappropriately holding the first girl near a

bathroom. (Trial Tr. vol. III at 67-68.) The second child-

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 21

victim further testified that Hughley had held her down by her wrists, attempted to pull her on top of him and had kissed her and other girls on their lips and against their wills, on several occasions. (Trial Tr. vol. III at 54, 59.)

Attorney James committed several errors during the course of his representation. However, "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. When assessing prejudice, "some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." [18] *See Strickland*, 466 U.S. 668. In our opinion, attorney James' errors, as serious as they were, did not affect the gravity of the evidence offered against Hughley.[19]

---

[18] Despite attorney James' errors at trial, he cross-examined witnesses, and attempted to subvert the credibility of the victims' testimony by challenging the childrens' recollections and arguing that they had been coached by the prosecution. (June 15, 2006 Hr'g Tr. at 17.)

[19]     Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 22

We reiterate that habeas relief is an extraordinary remedy[20]; and that, the burden is upon the habeas petitioner to attack the validity of the judgment under which he is imprisoned. *See Knowles*, 129 S. Ct. at 1422; *see also Breakiron*, 2011 U.S. App. LEXIS 7885, at *34-35. Hughley fails to meet this burden because, in all of Hughley's extensive pleadings, he fails to address how, if at all, a more effective tactical approach could have altered the result of the proceedings where several witnesses testified as to Hughley's mode of sexual assault and misconduct. This is particularly true where the jury heard the powerful testimony of two child victims who corroborated a pattern of sexual abuse, rape and sodomy by Mr. Hughley.

Given the evidence presented against Mr. Hughley, we cannot conclude that absent attorney James' errors, the factfinder would have had a reasonable doubt concerning Hughley's guilt. As such, Mr. Hughley has neither demonstrated a reasonable probability that, but for his attorney's deficient representation, the outcome of these proceedings would have been different nor otherwise undermined our

---

*Strickland,* 466 U.S. at 696.

[20] *Bousley,* 523 U.S. at 621.

*Frank Hughley v. GVI*
D.C. Crim. App. No. 2006-0110
Memorandum Opinion
Page 23

confidence in the reliability of the jury's verdict.[21]

Accordingly, Hughley fails to satisfy *Strickland*'s prejudice

prong.

## IV. CONCLUSION

We disagree with the trial court's conclusions that

defense counsel provided competent assistance during this

Appellant's criminal trial. However, because the Appellant has

failed to meet his burden of demonstrating a reasonable

probability that but for counsel's unprofessional errors, the

result of this trial would have been different, we **AFFIRM** the

Superior Court's ultimate determination concerning his habeas

ineffective assistance of counsel claim.

------------

[21] Hughley's argument that he received ineffective
assistance because his verdict was rendered by an all-
female jury is of no moment. As *Strickland* explains.

> The assessment of prejudice should proceed on
> the assumption that the decision maker is
> reasonably, conscientiously, and impartially
> applying the standards that govern the decision.
> It should not depend on the idiosyncracies of
> the particular decision maker, such as unusual
> propensities toward harshness or leniency.
> Although these factors may actually have entered
> into counsel's selection of strategies and, to
> that limited extent, may thus affect the
> performance inquiry, they are irrelevant to the
> prejudice inquiry.

*Strickland*, 466 U.S. at 695.